090-1585 Bill v. Charles Jackson When your case is called, please approach the podium. Tell us your name and who you represent. This is a recording device, it's not a microphone, so keep your voice moderated. Each side will have 15 minutes to make their arguments. The appellant should save a few minutes for rebuttal. We have read your materials carefully, so I would encourage you to get to your most important issue first. Whenever you're ready, we'll give you peace. Proceed. Why don't you both come up, tell me your name, who you represent. The appellant stays up, tells me her name, and then you sit down, and then you come back when it's your turn. My name is Emily Filpe, and I represent Charles Jackson in this matter. Good morning, I'm Assistant State's Attorney Emma Nowacki on behalf of the people of the state of Illinois. Whenever you're ready, counsel. I'd like to reserve a couple minutes for rebuttal. This morning I'll be focusing my remarks on the first issue raised in the briefs. However, if you have questions about the second argument, I'll be... One thing I didn't say that I usually say, it's 15 minutes per side. We're not real sticklers for watching the clocks, so if we're engaged, we'll let you go on a little longer, but please try to watch your time, both of you, and if you're going on too long, we'll ask you to wrap up. A judge has the discretion to question the witness, to elicit the truth, or to bring enlightenment to material issues which seem obscure, as long as he does so in a fair and impartial manner. Here, the judge took over the proceedings and crossed the line, assuming the role of the prosecutor, when he took it upon himself to aggressively question the defense expert witness, Dr. Frumkin. Frumkin's testimony must be read as a whole to get true flavor and effect of the judge's insistence, and as the state admitted... Wasn't this a bench trial? It was a bench trial, Your Honor, but the legal concepts remain the same. I mean, this error of a judge crossing the line and acting as a prosecutor... Absolutely, and it's totally proper for a judge to ask clarifying questions, but the problem is, in this case, the judge's questions went beyond just clarifying. And, you know, he took over, he acted as a prosecutor. It wasn't just clarifying. Some of the questions indeed were clarification questions, but many, many of the questions here weren't. Give me an example. Well, some of the questions here, he questions the veracity of Dr. Frumkin. He says, you know, is that what it actually says about Frumkin's representation of the CIRMAC record? He asks Frumkin questions about bias, asking him about remuneration. What's wrong with that, counsel? Why isn't that under the umbrella of a clarifying question? It's the way that the judge goes about asking these questions. I mean, the judge, you really need to consider the record as a whole to really get a feel for what the judge did in this case. I mean, also the timing of these questions is very important. The questions began early on during direct examination when the judge does not yet know what the witness is going to testify to and doesn't know yet how his testimony is going to be developed. When the judge interrupts during direct examination, it can't be said that he's attempting to bring enlightenment to obscure issues because, again, he just does not yet know what issues are obscure at that point. Ms. Filpe, excuse me for interrupting. You're getting to the conclusion. You're cutting to the chase on your conclusion, but tell us with particularity exactly what comments the judge made which indicate that he had prejudged the case or that he was relying on his own personal knowledge. Okay. Set forth with particularity. I think the most glaring example of the judge dismissing evidence based on his own personal knowledge is when he interjects knowledge about the Cook County Jail's distribution practices of psychotropic medication. During Dr. Frumkin's testimony, the judge keeps insisting on corroboration of his opinion that Jackson is not sane and that he wants to know Jackson's mental state at the time he's at CERMEC. But what's wrong with that? Isn't that what he needs to know to determine whether or not this man's insanity defense is appropriate? Yes, he does need to know his mental status. With particularity. That's what we're interested in. Your Honor, when Frumkin says that Jackson has been prescribed antipsychotic medications at CERMEC, the judge says, I'm told that's given in circumstances where somebody would not meet the DSM-3 requirement for mental illness. They're given proactively for people in incarcerated circumstances. The judge's comments there show personal knowledge. There is no evidence at all in trial that psychotropic medications are given proactively at CERMEC. The problem with this is that we just don't know whether the judge's knowledge is correct or not because it's untested by cross-examination. We just don't know if it's reliable. Another problem is that the judge isn't always right. At one point, the trial judge tells Dr. Frumkin that he cannot testify about the medication that Jackson is taking because, and I quote, you are not a physician, though, are you? But then the judge goes on to interject his own personal knowledge, stating that doxepin is a heroin derivative. But he's wrong. It's not. And that's another reason why it's so important that the judge does not interject his personal knowledge. Let me ask you this. Three incidents is your site. Is there anything in the court's ruling that suggests that he gave any weight to what you're arguing here in his ruling in the case? In his ruling, yes. In another example of the judge. No, as far as his ruling on how the meds are given at CERMEC, the fellow was not a physician or not an MD. Anything to show in his ruling, which was very extensive, as to how he relied on those responses to those questions in his ruling? His ruling shows that he didn't give any weight to the fact that immediately after he, Jackson, was arrested, which is about a week after the shooting, he was put on antipsychotic medications. I mean, the judge, Dr. Frumkin is talking about this brain damage. And he's saying that, well, and he's also talking about Jackson's mental status immediately after CERMEC. And one of the things he's talking about is that Jackson immediately is prescribed psychotropic medication. But the judge here in his comments is saying that he, you know, he's dismissing this. At every turn, he's – Let me ask you this. Was there any testimony that he was prescribed antipsychotics before this incident, that he had any history of diagnosis of mental illness, or was prescribed any psychotropics? No, there's no testimony of that. So wouldn't that be an appropriate question for the court, then, to say, well, all of a sudden, the guy moved on to CERMEC. I mean, how old was the gentleman at the time? He was 56. So 56 years of life, and never any testimony about prescribing antipsychotics before that. Right. But at the time he gets to CERMEC, he's prescribed this antipsychotic medication. But he's also recorded by CERMEC as having auditory and visual hallucinations. He's poorly groomed. He's having a lot of problems here. He's showing psychotic symptoms. No, but you didn't answer Justice Connors' question. I have to say, I'm concerned. Isn't it an appropriate question for the trial court to try to determine at what point in time did all of this start? Because there was no evidence in this case of a person who was 56 or 57 years old who has this level of mental disability, or whatever it's termed, and they've never been treated for it before. Isn't that an appropriate inquiry for the trial court to make? If that were what – if that exactly was what the trial court did, then that would be appropriate. But here, Dr. Frumkin's providing this evidence and saying, you know, Judge Jackson was prescribed antipsychotic medications right when he got to CERMEC, and the judge is dismissing that evidence. That's the big problem with this section right here. Well, where is the evidence that he dismissed it? He's dismissing it, saying, I'm told that's given in circumstances where someone would not meet the DSM-III requirement for mental illness. They're given proactively for people in incarcerated circumstances. He's dismissing the fact that this is psychotropic medication. This isn't just some sort of proactive medication. It's given at CERMEC, which suggests that there is someone at CERMEC that says – that identifies that Jackson has these psychotic aspects that require antipsychotic medication. Did he inquire further as to who prescribed those medications? He did. And that's part of the insidious nature of what the trial judge is doing here. The court keeps demanding corroboration of Dr. Frumkin's opinion that Jackson has brain damage and mental illness, and in each instance of corroboration that Dr. Frumkin provides, such as, oh, he was prescribed antipsychotic medication right away, the judge kind of knocks down. The judge also does this with the evidence of IQ. The most significant, according to Frumkin, evidence of brain damage is his IQ evidence. When Frumkin provides the information of Jackson's low IQ evidence, the judge calls it a total canard. And he says this in his ruling. He says, I view the IQ evidence in this case as a total canard. He goes on to say, mental acuity is constantly misrepresented in the circumstances of the testimony that I hear from the witness stand in this building. And when there's a divergence like this, I personally view this as being more predicated on factors relating how the individual reacts to test taking. What was Dr. Frumkin's opinion based on his mental acuity? He wasn't able to appreciate the criminality of his conduct? It was based on his mental illness and based on his brain damage. The mental illness being that he had a psychotic disorder not otherwise specified. Right, but not on his mental acuity, though. The mental acuity went to the brain damage. The problem with the IQ evidence shows that there was brain damage in this situation. Jackson was not... I don't know, wait a minute, counsel, say that again. The IQ evidence, according to Dr. Frumkin, was the main evidence of brain damage. The IQ evidence is what tipped off Dr. Frumkin that there was, and that's why he referred it to Dr. Harburner to look into whether there was a brain damage. The reason is Jackson was not born with low mental ability. He was in gifted programs in high school. He was even called a nerd growing up in school. He received a two-year Associate of Arts degree from a junior college. Yet now... We got a degree, counsel. There's no... According to the doctor, the family said that he did, and there's no reason to think that anyone's making this up. I think they said he went to college. I don't know that he got a degree. I believe Dr. Frumkin said degree, but regardless, the fact is, at this point, Dr. Frumkin is saying that Jackson's IQ scores are placing him in the lowest 7th percentile of the population. So this is a big change from this relatively high-functioning individual. Let me ask you a specific question about that that you complain about. Sure. At one point, the judge asked Dr. Frumkin whether he had referred this individual for neurological testing in addition to neuropsychological testing. Correct. Because the judge wanted to know if there was any objective data that supported the brain damage claim. And you complain about that. What's wrong with the judge asking about neurological testing in addition to the neuropsychological? Well, the judge keeps asking about the CT and the PT scans, even though Dr. Frumkin testifies that not all brain damage shows up on scans and that these neuropsychological tests are an established battery of tests that are known to pick up brain damage, whereas scans don't always pick up on it. But the judge, you know, sua sponte asks about these scans on a couple of different instances. These questions show predisposition in the fact that the judge is suggesting that there must be scans to show brain damage. But I'd like to go back to the IQ evidence briefly because the problem, there's a few problems with what the judge was stating about the IQ evidence. First of all, the IQ evidence, as I mentioned, was relevant to show the decline in Jackson's mental functioning and this brain damage. Also, calling it a canard, there's no evidence to believe that this is a deception. I mean, a canard comes from the French word meaning to cheat and deceive. You know, it's a false or unfounded report or story, especially a fabricated report. There's just no evidence to believe that that's what this is. Also, the judge is dismissing the IQ evidence based on what he's heard in other cases in the building. He can't do that. The judge must make his ruling based on the evidence that he hears in this particular trial. But again, counsel, low IQ was not a basis for the doctor's diagnosis and for the reason that he was unable to appreciate the criminality of his conduct, right? It was just like an additional, by the way, he's got low IQ. It was a basis. It was a basis. It was how they determined, part of the reason, let me step back. It wasn't the basis of the opinion on insanity. It was twofold. It was that the psychotic disorder not otherwise specified, the overlay between that, the mental illness and the mental defect, which was shown by the IQ evidence along with the battery of tests that Dr. Harburner did that showed his decreased mental ability and his brain damage. It was the overlay of these two things that prevented Jackson from being able to appreciate the criminality of his conduct. That was the basis of Dr. Frumkin's ruling. You really need to look at the record as a whole to get a fair picture of the judge's actions in this case. You know, the judge's insistent questionings, questions, greatly disrupted the flow of defense counsel's presentation of its expert witness. Also, Dr. Frumkin was the only witness for the defense and as such his testimony was critical to Jackson's case as it was the whole case. The judge's questioning interrupt defense counsel's planned presentation. At times the judge derails the line of defense counsel's questions. For example, defense counsel asks Dr. Frumkin about the DSM-IV and the judge interrupts her and says, I know what that is, next question. Let me ask you a question that's related to that. It goes to your second issue. Why was Dr. Frumkin the only witness? You know, it seems to me that this goes to your ineffective assistance of counsel question, but Dr. Frumkin was the only witness at trial. I mean, can you shed some light on why that was? I do not know why Dr. Frumkin was the only witness at trial. I mean, that's not on the record and obviously you only have one. There will be one here soon. Right. Right. I wish I knew and then I could report to you. But unfortunately I don't. Counsel, can I ask you, didn't the judge, as you use your term interrupt, counsel in cross-examination as well? Absolutely. There's at least a couple points during cross-examination where the judge wholly takes over for the prosecutor. And it's this sort of back and forth. My point is he interrupted both. He interrupted both, yes. I mean, like I said, the judge took over these proceedings. You know, he starts in right now. Where did he go over the line? It's a bench trial. He has a right to inquire. He must remain impartial. But where did he go over the line? I would say, Your Honor, that, I mean, obviously not every question is over the line. I mean, I can't possibly say that to you guys. It's not. There are some clarifying questions. But the problem here is that there is a large quantity of questions here that is over the line. It's what he did. I mean, you have to look at the record as a whole. He jumps into the proceedings. He takes over. There's a section during direct examination where the defense counsel just starts asking Dr. Frumkin about the CIRMAC records. And the judge just jumps and takes over for eight pages. It's just the judge asking questions of the defense witness for eight pages. Again, this isn't just clarifying because Dr. Frumkin has not yet asked about it. I think the timing is critical here. This isn't a case where the expert testified on direct, so the defense was able to present its defense in the way that it has a right to do. The prosecutor got a chance to poke holes in it, as prosecutors do. Maybe there was a redirect to another cross. And then the judge says, you know, there's still some issues I'm unclear about. That's not what happened here. The judge jumps in right away. He's a part of this proceeding. He's a de facto prosecutor as well because his questions are also poking holes in Dr. Frumkin's testimony. Every instance of ‑‑ With the judge asked questions that are clarifying questions that are helpful, the answers to which are then helpful to the prosecution's case, is that what you say makes ‑‑ is that what makes him an advocate? No. He asks questions and some of the answers to those questions help the state's case. No question about that. But how does that make him a prosecutor? I mean, those are clarifying questions, and there's an answer to all of these questions. Some of the answers were helpful to the state. Some of them were not. You, of course, object to the ones that were helpful to the state. And I'm asking you, how does that make the judge ‑‑ how does that transform the judge into the advocate that you're claiming he was? It's not just that he's eliciting evidence helpful to the state. It's that when you look at all of the questions and everything he did and asked of Dr. Frumkin, you see that he has prejudged this case. All of his questions and even his comments, they're laden with his opinion. At some point he even debates facts with Dr. Frumkin, saying, well, that's reasonable, isn't it? And he asks leading questions. As I mentioned, he asks about bias. He's not just eliciting evidence that might help. Can we agree on specific comments? First, let me rephrase that. Can we agree that in order for us to accept your view of how the trial judge behaved, we'd have to find that he exhibited a clear bias? Give me three examples of what you say would be a clear bias on the part of this trial judge in some of the questions he asked. In some of the questions. Well, first of all, his statements, as I mentioned, dismissing. I'll make it easy for you. Give me one example. Well, the statements about the IQ evidence and the statements about the psychotropic medication. I mean, he's dismissing those based on his own knowledge, and that's also crossing the line. And he was also wrong in that, wasn't he? And he's also wrong at that when he talks about it. So those items that he took from his personal knowledge, he was wrong. What were those items? When he said doxepin is a heroin derivative, that's wrong. I don't know anything about Cook County Jail's psychotropic medication practice. I don't know if they're handing out antipsychotic medications, you know, as a matter of course to people when they get there. I don't have any knowledge about that. But it's not in the record, and that's the problem here. You know, he's dismissing that and saying, oh, you know, sure he's on medications, but just because he's on antipsychotic medications shortly after the shooting, one week afterwards, doesn't mean that he's, you know, experiencing, it's dismissing the psychotic behavior that he's having or the support that getting these medications gives to Dr. Frumkin's testimony because, oh, they just hand those out proactively. It doesn't mean that he has a psychotic disorder in any way. It's just diminishing every aspect of Dr. Frumkin's opinion here. Also, the quality of it is very different of the questions that the judge asked Dr. Frumkin versus those he asked the state witnesses. He asked Dr. Coleman and Dr. Nick Carney. Did he ask the doctor if he was being paid for his testimony? He did. He did. He asked Dr. Frumkin about remuneration, yes. I mean, it's common practice experts get paid for their work. Absolutely, it's common practice. And you would think he would know that. But, again, it's his question. But it's a prosecutorial question. That's a typical prosecutorial question. Exactly. And he asks this on direct. He didn't even get the prosecutor a chance to ask about this. He also, again, like I said, takes over cross-examination. He asks Dr. Frumkin about the reasonableness of Jackson's flight and fear. I have one last one. Okay. What's the standard of review, in your opinion, and why? I believe that it's de novo because it's about the defendant's right to a fair trial. However, I acknowledge the state's case says it's abuse of discretion. However, while the judge has the discretion, this court is obligated to look at the record as a whole in order to determine whether the judge crossed the line. So, in effect, it is essentially a de novo review in my perspective. So the judge took over the proceedings. During direct, defense counsel was on the sidelines. And during cross, the judge used the prosecutor's role. And then, in his ruling, he relied on his own personal knowledge. For the above reasons, we ask that you remand this case for a new trial before a new judge. Thank you. Thank you. May it please the court. Again, I'm Assistant State's Attorney Emma Nowacki on behalf of the people of the state of Illinois. The defendant is arguing in this case that Judge Ford's questions themselves demonstrate a bias. Perhaps the best response to this answer is Judge Ford's words himself on the record. His explanation to Dr. Frumkin of why he's asking these questions. And he says to Dr. Frumkin, quote, if I'm going to accept your opinion, whether or not, I don't know yet. But if I'm going to accept your opinions, I need to understand them fully. The reasons I ask these questions, because you have indicated that he provides you with information about what antagonized him. That is what we have, Judge Ford's explanation, for why he's asking these questions. And I would submit that that's proper. Counsel, they complain about a lot more than just asking the questions. For example, there are several instances in the transcript where the judge makes and sustains his own objection. What's your response to that? Isn't that the role of the prosecutor? The judge objects before the prosecutor has a chance to object. Then he sustains the objection himself and they move on. You know, why isn't that acting as an advocate? The one instance I can recall. There may be more, but are you saying if it's only one it's okay? Or is it two that's okay? Is that acting as an advocate, yes or no, in your opinion? No, Your Honor. I think it depends on what he's sustaining. It's okay. I'm asking a very narrow and specific question. Is it okay for the judge to make an objection that's an objection that's clearly on behalf of the state and without the state having raised that and then sustain the objection? Is that okay in your opinion? In a bench trial, when the only question is in regards to the defendant's sanity and whether a defendant has met. No, I'm not. Remember, this is my question. Yes, no, Your Honor. I apologize. It's a very narrow question. Is it appropriate for a trial judge to ask to make an objection that is clearly an objection that should be made by the state without the state raising it and then sustain that objection? Is that okay? And then I have a follow-up question. In a bench trial. In a bench trial, yes, in a bench trial. That's an ad hoc. Yes. Okay. And my follow-up question is does that put the judge in the realm of acting as an advocate, as the defense claims? No, it does not. Okay. Well, I have some more questions along those lines. So throughout the trial, it's okay for the judge to make and sustain objections on behalf of the state whenever he or she wishes, and that's okay in your opinion? No, not whenever he or she wishes. So what's the difference? I just asked you. I know of two situations where it happened in this transcript. There may be more, but two jumped out at me very glaringly. So is there, when is it okay and when is it not? I would submit that it's okay when the evidence has either already been brought to the court's attention and perhaps the court is trying to move the proceedings along, or perhaps the evidence is inadmissible. And in those cases, it's the judge's duty to see that only proper evidence is before that court. And in this case, I would submit that the judge's questions overall to all of the expert witnesses. I'm just asking specifically about objections right now because that is something. Can we agree that that's unusual? Yes, Your Honor. Of course. So that's specifically what I'm asking about right now. And along the lines of what's the line of demarcation that makes that okay or not okay or can you do it two times or if you do it throughout the trial, what makes that either okay or not okay? That's what I'm trying to find out from your perspective. Well, the people do not condone the judge making his own objections. The standard in this case is whether the judge's questions and objections on the record demonstrate a bias and a personal animosity or hostility towards the defendant. And that is the sole question in this case, whether the record as a whole demonstrates that. And I believe that the objections in this case do not demonstrate a bias, a personal animosity against the defendant. Coupled with the fact that we agree that it's unusual for that to occur in the trial, whether it's a bench trial or not, with the fact that it happened more than once, do you think that they make a reasonable argument that that does demonstrate some bias on the part of this trial, Judge? No, Your Honor. I don't think that that by itself demonstrates a bias. I would think that there would need to be much more, much more of a clear bias. The standard is that in a bench trial prejudice is only shown when there is a personal animosity towards the defendant. Let me ask you another question. Your opponent made a very strong argument throughout her brief and when she was standing here that her biggest complaint was the judge had prejudged this case. Do you think the fact that before the verdict was rendered, the trial judge referred to the killing as a murder several times throughout, you know, does that suggest that he had come to a conclusion before the case was over? Absolutely not, Your Honor. Before we even reached the determination of sanity, the people must prove beyond a reasonable doubt the defendant committed the crime, in this case a murder. But the judge was a trier of fact here, and when he was having a conversation, he said, and with this murder, do you think that that's the ultimate fact that was going to be proved? The fact that the judge referred to that early, to the killing as a, quote, murder, throughout the trial, early in the trial, does that suggest that he had prejudged the case as your opponent claims? No, I believe it does not. Because it is the defendant's burden to prove by clear and convincing evidence, and it is their sole burden to prove insanity, and the trier of fact does not reach the question of sanity until he reaches the decision that the people have proved beyond a reasonable doubt the defendant committed the murder. And in this case, it was largely uncontested that defendant committed the murder. That was the theory at trial was not that defendant didn't commit this crime. That was clear to anybody, and especially to the trier of fact. The only question in this case is whether Dr. Frumkin's testimony in itself proved by clear and convincing evidence that defendant was legally insane at the time of the offense. And the judge's questions to Dr. Frumkin do not demonstrate a bias, but they demonstrate that he was trying to fully understand the bases for Dr. Frumkin's opinions. In fact, it is very relevant in looking at whether the judge was biased and had predetermined the outcome in this case, that the judge's verdict in this case was guilty but mentally ill. Therefore, the judge found the defendant somewhat met his burden of proof in this case. He proved that defendant was severely mentally ill, which is the requirement for a finding of guilty but mentally ill. Most of the judge's questions to Dr. Frumkin in this case were in regards to whether defendant had a mental illness, suffered from a mental disease. For instance, defendant complains largely of the questions regarding whether someone else made a diagnosis from Cermak. What types of medication defendant was on, what those medications meant, what this IQ test meant in terms of brain damage. Well, this is all relevant in terms of whether defendant suffered from a mental disease or defect, which the court found he did, so clearly he was not biased. Really, the only determinative questions posed to the expert witnesses in this case in regards to whether defendant appreciated the criminality of his conduct were in regards to whether the specific facts of the case, defendant's explanation for the crime, how he gave a self-defense type of explanation, and his flight from the crime, and how he gave a different name when apprehended and asked for an attorney before being Mirandized. Excuse me. The appellant has directed us to the fact that during Dr. Furman's opinion, the court highly questioned the basis of that opinion by what he was relying on in the record and his reciting items from his own personal knowledge. Now, what's your comment on that? First... Because it appears that his items of personal knowledge were incorrect. Defendant argues that there's some incorrect knowledge about a medication that the judge thought was a narcotics medication, which apparently it was not. To be honest, I'm not quite sure. However, if the judge was incorrect in thinking it was a narcotics medication, that benefited defendant. If he was on a more serious medication than he actually was, that only shows that he was more severely mentally ill. I don't see how that at all demonstrates a bias or predisposition towards finding defendant legally sane. Let me just interrupt for a moment. I think that the question that I would like to ask as follow-up to what your opponent said, she is basically saying that the judge relied on many factors that were not in the record, some of which were incorrect, which all ended up causing him to come to a conclusion that he shouldn't have come to because it wasn't based on properly presented evidence. That's part of her argument, as I understand it. So what's your response to that? I don't think anything that the judge ruled on was based on improper evidence. Perhaps the only evidence from personal knowledge was the proactive distribution. However, again the medication, whether it was an opiate derivative or not, those are two examples that I can think of. Certainly. And this brings us back to the number again. Is one too many? Is two too many? How do we know that it didn't impact his decision? I think that's your opponent's point. I again would have to argue that consideration of the distribution practices of medication and what different types of medication meant, first was did not demonstrate a bias because he was found mentally ill by the trier effect. And in addition, Dr. Frumkin's testimony was misleading on this issue and unsupported. Dr. Frumkin is not a medical doctor. He does not have the authority to distribute medication, and yet he's testifying about these things. And he is arguing that simply because the defendant had a strange IQ result, he has brain damage. And Dr. Frumkin ordered no neurological testing. I would argue that it was necessary for the court to further develop these areas, and perhaps some of the questions were based on some of the court's own knowledge of insanity cases that he's heard before. But he was giving the doctor an opportunity to further develop his burden and further meet his burden. But Dr. Frumkin's testimony by itself did not meet the burden of clear and convincing evidence the defendant was legally insane. His opinion was based on unsupported evidence. He did not verify any injuries. He did not verify degree status. He is coming to the conclusion of brain damage simply as a result of IQ testing and some clinical testing without any actual supporting evidence. The state presented a couple of experts, didn't they? Yes, they did. We don't see in the record any aggressive questioning by the court as to those experts. I would submit the record itself doesn't demonstrate that Judge Ford was aggressive towards Dr. Frumkin. He may have asked more questions of Dr. Frumkin, but there's nothing in the record by itself that Judge Ford had a certain tone towards Dr. Frumkin. Well, you know, we don't have a videotape to watch. No. We have a record to read. Yes. And counsel is telling us that we have to look at the entirety as to get the tone and the complexion of this examination. And sometimes that can lead us in the wrong direction or the right direction. It's very subjective. It can be a subjective reading. But I mentioned that we don't see the same kind of cross-examining of the state's expert witnesses as the court demonstrated with the defendants. The defendant has the sole burden on this issue. And so the judge could have simply remained silent and entirely rejected Dr. Frumkin's opinion based solely on the lay witnesses who clearly demonstrated that the defendant in this case was sane. He fled from the scene. He asked for a lawyer. All that indicates the defendant appreciated the criminality of his actions. Dr. Frumkin's only explanation for the defendant not appreciating the criminality of his actions was that he didn't have the resources to appreciate other courses of action. Waukee, I'd like to take you back to the direction that Justice Harris has asked about in terms of the totality of the record that we have before us. And as Justice Harris said, we don't have a videotape. We can only discern the tone from reading the words on the record. When I read in the record in a couple of places where the judge interrupts the witness, the defense witness, in mid-testimony to bring out a statement, which bring out statements which negate something favorable to the defense, would you think that that's acting as an advocate? I mean, there are three or four places in the record where I mark where that occurred. Would that be something that we could look at in terms of looking at the totality of this record and saying that, and this only happened with Dr. Frumkin. It did not happen with respect to the two witnesses, expert witnesses that were called by the state. So what's your response to that in terms of how we should look at this in terms of the judge's role as an advocate? I believe that the best way to look at that is look at the court's own explanation as to why he's asking these questions. And he says to Dr. Frumkin he has to ask these questions so he can fully understand the basis for Dr. Frumkin's opinions. So when the court is perhaps interrupting the doctor and asking something about what does that mean about defendant's flight, and isn't that indicative that he appreciated the criminality, those were all questions still in the trier of facts mind that Dr. Frumkin's testimony had not clarified. And so the court is giving Frumkin an opportunity to further convince the judge. Simply because Dr. Frumkin fails to do that does not demonstrate a bias in this case. And none of the evidence in this case is improper. Defendant doesn't argue that this evidence is irrelevant evidence. This is all relevant evidence probative of whether defendant has met his burden of proof in this case, that he's legally insane. And I want to finally point out that the case's defendant sites are distinguishable. And no appellate court has ever reversed a trial judge's questioning of an expert witness in a bench trial on the sole issue of sanity. Judge Ford did not ask any questions of the lay witnesses when the people were proving their case in chief, their burden of proof. This is all on the issue of sanity. It's a unique case. And I would submit that because of the unique nature of this case, and because of the record as a whole does not demonstrate a personal animosity, Judge Ford did not abandon his role as a neutral trier of fact. And as a result, this court should affirm defendant's conviction. I have another question for you. What's the standard of review in your opinion, and why? The standard of review is an abuse of discretion because the trial court has the discretion to question a witness. And in addition, there's a plain error standard to meet in this case because defense counsel never made an objection, and defense counsel never raised the issue in a post-trial motion, never giving the judge a full opportunity to explain himself in this case and properly dispose of this issue in the trial court. And I would submit that because the evidence is so overwhelming, proving defendant guilty of first-degree murder, and that defendant did not meet his burden, defendant cannot meet a plain error standard. This is not amount to plain error. And for those reasons, those data are brief. We respectfully ask this court to affirm defendant's conviction. Thank you. Thank you. Ms. Spilby, brief response, please. Firstly, the statement says that there are no cases like this where a court has reversed. Well, neither the state nor myself have found any cases where this judicial conduct has become an issue in terms of mental illness. And the reason there are no cases like this is because there are no cases out there where the judge's questioning was at this level. Secondly, the state stood up here and said that she did not believe that the judge's questioning of Dr. Frumkin was aggressive. However, on page 22 of her brief, she does admit that the judge more aggressively questions Dr. Frumkin. The state also says that Dr. Frumkin's testimony is misleading because he's not a doctor and he can't possibly talk about medications. And I'd like to point out, too, with respect to this, that the court also objects himself. The court objects to Dr. Frumkin's testifying about medication, and Dr. Frumkin, in response, says, I do know about medication. Most, if not all, of my clients, my mentally ill clients, are on these medications, and it is something that he knows about. For the above reasons. But isn't it true that the court also asked a lot of, as the state points out on page 22 of her brief as well, that the court also asked numerous questions of the state's witnesses? That is true. You really need to look at the quality, though, of the questions that the judge asks Dr. Frumkin versus the state's witnesses. The judge asks the state's witnesses things like, what is your opinion predicated on? Why? Can you describe the procedures of those tests? There's nothing like the questions that the judge asks of Dr. Frumkin. They're a very, very different tenor. The questions of Dr. Frumkin are aggressive. They're constant. They're continuous. They're at the beginning. And also, the state mentions that the judge's questions are necessary to clarify Frumkin's testimony. However, at many points, the judge's questions of Frumkin were before Frumkin had even testified to this area of questionings, like his questions about the CIRMAC record. Frumkin just said, he just touched on that and said, I looked at the CIRMAC records. When the judge jumps in for eight pages straight, there's nothing to clarify at that point. The judge hasn't even heard the evidence. He also does this on cross-examination when he's talking about the reasonableness of Jackson's flight and the reasonableness of his reaction to Champliss's aggression. If there are no more questions, we'd like to ask this court to remand for a new trial before a different judge. Thank you both for your arguments. This case will be taken under advisement.